| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(For Court Use Only) |
|---|---|

**PLAINTIFFS**
Gary Plescher
Erika Plescher
1132 Richie Ave
Lima, OH 45805

**DEFENDANTS**
OCWEN                    and   MERS
Servicing Agent for MERS        PO Box 2026
PO Box 6440                     Flint, MI 48501
Carol Stream, IL 60197   and   Meritage Mtg Corp
                                9710 Two Notch Rd
Meritage Mtg Corp               Columbia, SC 29223
9300 SW Gemini Dr, Ste 100   and
Beaverton, OR 97008
                                CSC-Lawyers Inc. Svc
CT Corporation System           Stat. Agent for OCWEN
Stat. Agent for MERS            50 W. Broad St., Ste 1800
1300 E. 9th St.                 Columbus, Ohio 43215
Cleveland, Ohio 44114

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
Randy L Reeves #0009934
Randy L. Reeves Co LPA
973 W North St
Lima, OH 45805
419-228-2122 Fax: 419-222-6718

**ATTORNEYS** (If Known)

**PARTY** (Check One Box Only)
☒ Debtor      ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor    ☐ Other
☐ Trustee

**PARTY** (Check One Box Only)
☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin
☒ Creditor    ☐ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUES INVOLVED)
Complaint for Violation of Discharge Order, Confirmation Order and Stay pursuant to 28 U.S.C. Section 157 and 1334 and 11 U.S.C. Section 362 and 524.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) - Recovery of Money/Property**
[ ]  11-Recovery of money/property - §542 turnover of property
[ ]  12-Recovery of money/property - §547 preference
[ ]  13-Recovery of money/property - §548 fraudulent transfer
[ ]  14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
[1 ]  21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
[ ]  31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
[ ]  41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
[ ]  51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
[ ]  66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
[ ]  62-Dischargeability - §523(a)(2), false pretenses,
     false representation, actual fraud
[ ]  67-Dischargeability - §523(a)(4), fraud as fiduciary,
     embezzlement, larceny
     (continued next column)

**FRBP 7001(6) - Dischargeability (continued)**
[ ]  61-Dischargeability - §523(a)(5), domestic support
[ ]  68-Dischargeability - §523(a)(6), willful and malicious injury
[ ]  63-Dischargeability - §523(a)(8), student loan
[ ]  64-Dischargeability - §523(a)(15), divorce/sep property settlement/decree
[ ]  65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
[ ]  71-Injunctive relief - resinstatement of stay
[1 ]  72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
[ ]  81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
[ ]  91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
[ ]  01-Determination of removed claim or cause

**Other**
[ ]  SS-SIPA Case - 15 U.S.C. §§78aaa et.seq.
[ ]  02-Other (e.g. other actions that would have been brought in state
     court if unrelated to bankruptcy case)

☐ Check if this case involves a substantive issue of state law

☐ Check if this is asserted to be a class action under FRCP 23

☐ Check if a jury trial is demanded in complaint

Demand $

Other Relief Sought

## BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES

| NAME OF DEBTOR<br>**Gary Plescher**<br>**Erika Plescher** | | | BANKRUPTCY CASE NO.<br>10-35435 |
|---|---|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>**Northern Dist of Oh** | | DIVISIONAL OFFICE<br>**Western Division** | NAME OF JUDGE<br>Richard L. Speer |

### RELATED ADVERSARY PROCEEDING (IF ANY)

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

Randy L Reeves

DATE 8 - 10 - 10

PRINT NAME OF ATTORNEY (OR PLAINTIFF)
Randy L Reeves

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of the court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Parties.** Give the names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if known.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | / | |
| Gary Plescher | / | Related Case **10-35435** |
| Erika Plescher, | | |
| | / | Judge **Richard L. Speer** |
| Debtors, | | |
| | / | Adversary Case _____ |
| Gary Plescher | | |
| Erika Plescher | / | |
| 1132 Richie Ave | | |
| Lima, OH 45805 | / | |
| Plaintiffs, | | |
| -vs- | / | |
| | | |
| OCWEN | / | **COMPLAINT FOR** |
| Servicing Agent for MERS | | **RELEASE OF MORTGAGE** |
| PO Box 6440 | / | **LIEN** |
| Carol Stream IL 60197 | | |
| Defendant. | / | |
| | | |
| Also serve | / | |
| | | |
| MERS | / | |
| PO Box 2026 | | |
| Flint, MI 48501 | / | |
| | | |
| Also serve | / | |
| | | |
| Meritage Mortgage Corporation | / | |
| 9710 Two Notch Road | | |
| Columbia, SC 29223 | / | |
| | | |
| Also serve | / | |
| | | |
| Meritage Mortgage Corporation | / | |
| 9300 SW Gemini Drive, Suite 100 | | |
| Beaverton, OR 97008 | / | |
| | | |
| Also serve | / | |
| | | |
| Csc-Lawyers Incorporating Service | / | |
| (Corporation Service Company) | | |

| | |
|---|---|
| Statutory Agent for | / |
| OCWEN Loan Servicing, LLC | |
| 50 W. Broad St | / |
| Suite 1800 | |
| Columbus, Ohio 43215 | / |
| | |
| Also serve | / |
| | |
| CT Corporation System | / |
| Statutory Agent for Mortgage | |
| Electronic Registration Systems, Inc. | / |
| 1300 E. 9th St. | |
| Cleveland, Ohio 44114 | / |

The Debtor/Plaintiff, Gary Plescher and Erika Plescher, by and through their attorney represents:

1. This is a core proceeding. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. Section 157 and 1334 and 11 U.S.C. Section 506(a);

2. That the Debtor(s) caused to be filed in the United States Bankruptcy Court for the Northern District of Ohio, Western Division, a Petition under 11 U.S.C. Chapter 13 on August 9, 2010;

3. That the Debtor(s) filed with this Court a Chapter 13 Plan (said Chapter 13 Plan is attached and incorporated herein as Exhibit "A");

4. That the Debtor's Chapter 13 Plan clearly set forth that OCWEN, Servicing Agent for MERS, was secured by a second mortgage on the Debtor's residence located at 1132 Richie Avenue, Lima, Ohio 45805, (the "Property") and that there was no value for the mortgage to attach to, therefore said claim would be stripped and paid as unsecured;

5. That OCWEN holds a first mortgage on the Property in the amount of $56,013.22, Capital One has a judgment lien in the amount of $1,102.37, and GE Money

Bank has a judgment lien in the amount of $1,039.72, for a total amount of $58,155.31 which exceeds the property value of $55,000.00.

6. That there is no equity remaining in the property for the second mortgage, held by MERS, recorded on October 26, 2006 in the Allen County, Ohio Recorder's Office, Volume 2006, Page 10928, to attach to, and therefore the lien should be stripped (mortgage is attached and incorporated herein as Exhibit "B");

**WHEREFORE**, in compliance with the Confirmed Chapter 13 Plan, 11 U.S.C.S. § 506(a), *In re Lane*, 280 F.3d 663 (2003 6th Cir.), the Debtor respectfully requests this Court to Order MERS to release its lien which was recorded on October 26, 2006 in the Allen County, Ohio Recorder's Office, Volume 2006, Page 10928 upon completion of the Chapter 13 Plan; and for such other and further relief as is just.

Respectfully submitted:

RANDY L. REEVES CO., L.P.A.

/S/ Randy L. Reeves
BY:   RANDY L. REEVES # 0009934
Attorney for Debtor/Plaintiff
973 West North Street
Lima, Ohio 45805
Telephone (419) 228-2122
Facsimile (419) 222- 6718
randy@reeveslpa.com

In re
Gary Allen Plescher
Erika Marie Plescher                                                    Case No. _____
―――――――――――――――――――――
Debtor(s)

## CHAPTER 13 PLAN
## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

(1)  The future earnings or other future income of the Debtors is submitted to supervision and control of the Trustee.

(2)  **THE DEBTORS SHALL PAY TO THE TRUSTEE** the sum of $117.00 per month for a period of 36 months, plus all tax refunds for the years 2010, 2011, and 2012. Said time for the length of the plan will be extended to the extent necessary to pay the unsecured percentage set forth below.

(3)  Trustee shall make disbursements as follows:

a)  Full payment in deferred cash payments of all priority claims under Section 507.

b)  Secured Creditors

**1) Ocwen** is secured by a mortgage on the Debtor's Residential Real Estate located at: 1132 Richie Ave., Lima OH 45805, No arrearage will be paid as Debtors will file for a loan modification. The regular payments to be paid by the Debtors directly to the Creditor. Said payments to be at the non-default rate of interest with no late charges assessed on post petition payments based upon the pre-petition arrearage. Any claim for post petition expenses or charges must be set forth on a supplemental claim to be filed with the Court prior to completion of the Debtors Plan.

**2) Ocwen** is secured by a mortgage on the Debtor's Residential Real Estate located at: 1132 Richie Ave., Lima OH 45805. Said claim will be stripped and paid as unsecured below as there is no value to attach to the real estate above the first mortgage and pro rated real estate tax. Said lien shall be retained on the property until Discharge at which time the Creditor shall release the lien.

**3) Capital One** is secured by a Judgment Lien on the Debtor's Residential Real Estate located at: 1132 Richie Ave., Lima OH 45805. As said lien impairs the Debtors exemptions. The lien would be avoided pursuant to 11USC section 522 and said Creditor will be paid as unsecured below.

**4) GE Money Bank** is secured by a Judgment Lien on the Debtor's Residential Real Estate located at: 1132 Richie Ave., Lima OH 45805. As said lien impairs the Debtors exemptions. The lien would be avoided pursuant to 11USC section 522 and said Creditor will be paid as unsecured below.

**5) Citifinancial** is secured by a 2000 Oldsmobile Alero and will  be paid its allowable secured claim of $700.00 by the Trustee, with interest at 5% if interest is claimed to the extent of the secured portion of the claim. The balance of said claim is to be paid as unsecured below.

c)  After payment of all priority and secured claims, the Trustee shall pay 3% of all unsecured claims duly proved and allowed. Said percentage to be reviewed after the claims bar date and the percentage may increase based upon the claims allowed and funds received from tax refunds

(4)  The Court, from time to time during the period of this Plan, may increase or decrease the amount of the payments provided in this Plan or extend or reduce the period of time for any such payments.

(5)  Title to the Debtor's property shall remain property of the estate until completion of the Chapter 13 Plan.

(6)  All Creditors with claims disallowed or who fail to file claims will be barred from proceeding with any action against the debtor or their property and upon completion of the Plan to the extent said creditor is secured said creditor shall immediately release its security interest.

All secured liens will remain on the collateral until completion of the Plan at which time the liens will be released except any mortgage liens not stripped by the provisions above.

(7) **Conduit Mortgage Payments:** Regular mortgage payments on the following mortgage claims will be paid on a conduit basis by the Trustee, subject to his full fees, beginning with the first calendar month after the Petition Date, **if conduit payments are proposed by Debtor**. The holder of a mortgage claim paid by conduit mortgage payments shall provide the Trustee with written notice of, or shall file an amended proof of claim for, any changes in the monthly mortgage or escrow payments during the term of the Plan. The mortgage claim holder shall also serve a copy of the written notice or amended proof of claim on Debtor and Debtor's attorney. Upon receipt by the Trustee of such written notice, or upon the filing of an amended proof of claim, the Plan shall be deemed modified to permit the Trustee to disburse the amended conduit mortgage payment amount. In the event Relief from stay is granted in the case all payments will cease and the monthly payment made by the Debtor to the Trustee will be adjusted accordingly.

(8) Debtor's Attorney having previously consented, all creditors having mortgages on debtors' real estate shall recommence normal correspondence regarding the mortgage with the debtors as was their normal business practice prior to the commencement of this case, including the issuance of coupon books and/or monthly statements, yearly escrow analyses, 1099's, and any and all other correspondence that would issue in the ordinary course of business. During this Chapter 13 case, the debtor(s) may attempt to enter into loss mitigation negotiations with their mortgage lender(s). This may result in an agreed modification of the debtor(s) mortgage(s).


**Dated: 8/9/10**        **Signature /S/Gary Allen Plescher**
                                **Gary Allen Plescher**
                                **Debtor**

**Dated: 8/9/10**        **Signature /S/Erica Marie Plescher**
                                **Erika Marie Plescher**
                                **Debtor**



After Recording Please Return To:

**MERITAGE MORTGAGE CORPORATION**
*[Company Name]*

*[Name of Natural Person]*

**9710 TWO NOTCH ROAD**
*[Street Address]*

**COLUMBIA, SC 29223**
*[City, State Zip Code]*

_____ *[Space Above This Line For Recording Data]* _____

Loan No.: 1000269722

# MORTGAGE
## (Secondary Lien)

MIN 100110710002697224

**This loan is made within the provisions of the Ohio Mortgage Act, ORC §§ 1321.51-60, as amended.**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19, and 20. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A)     **"Security Instrument"** means this document, which is dated October 24, 2006,
together with all Riders to this document.

(B)     **"Borrower"** is GARY PLESCHER AND ERIKA PLESCHER, HUSBAND AND WIFE AS JOINT TENANTS.  Borrower is the mortgagor under this Security Instrument.

(C)     **"MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the mortgagee under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI  48501-2026, tel. (888) 679-MERS.

(D)     **"Lender"** is **MERITAGE MORTGAGE CORPORATION.**
Lender is a Federal Savings Bank organized and existing under the laws of the United States.  Lender's address is 9300 SW GEMINI DRIVE, SUITE 100, BEAVERTON, OR  97008.

---

Ohio Mortgage—Single Family—Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 1 of 15

MERS Modified Form 3001 01/01
Modified By "The Compliance Source, Inc." 14000OH 04/02 Rev. 08/03
© 2002, The Compliance Source, Inc.



**(E)** "**Note**" means the promissory note signed by Borrower and dated October 24, 2006. The Note states that Borrower owes Lender **Thirteen Thousand Nine Hundred Eighty and 00/100ths Dollars (U.S. $13,980.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2021.

**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, if allowed under Applicable Law, and all sums due under this Security Instrument, plus interest.

**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider

☒ Balloon Rider    ☐ Planned Unit Development Rider    ☐ Biweekly Payment Rider

☐ Home Improvement Rider    ☐ Revocable Trust Rider

☐ Other(s) [specify]

**(I)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** "**Escrow Items**" means those items that are described in Section 3.

**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 *et seq.*) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any

Ohio Mortgage–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
     Page 2 of 13     
MERS Modified Form 3801 01/01
Modified by "The Compliance Source, Inc." 143910MU 04/02 Rev. 09/04
© 2002, The Compliance Source, Inc.


additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's mortgage covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the **County**                     of **ALLEN**                     :
                              *[Type of Recording Jurisdiction]*      *[Name of Recording Jurisdiction]*
SITUATED IN THE CITY OF LIMA, COUNTY OF ALLEN AND STATE OF OHIO AND KNOWN AS:

LOT NUMBER SEVEN THOUSAND FOUR HUNDRED FORTY-NINE (7449) IN COLLEGE HILL EXTENDED ADDITION TO LIMA, IN SAID COUNTY AND STATE, TOGETHER WITH THE SOUTH ONE-HALF (1/2) OF THE VACATED ALLEY LYING NORTH OF AND ADJACENT TO SAID PREMISES.

APN: 36-2511-04-028.000

Parcel No.: 36-2511-04-028.000
which currently has the address of 1132 RICHIE
                                                    *[Street]*
        LIMA                       , Ohio 45801                          ("Property Address"):
        *[City]*                      *[Zip Code]*

        TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

        BORROWER COVENANTS with the mortgagee and his heirs, assigns, and successors, that he is lawfully seised in fee simple of the granted premises; that they are free from all encumbrances; that the mortgagor has good right to sell and convey the same; and that he does warrant and will defend the same to the mortgagee and his heir, assigns, and successors, forever, against the lawful claims and demands of all persons.

        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

        UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

Ohio Mortgage–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com
                              Page 3 of 13        Modified By "The Compliance Source, Inc." 14800OH 04/02 Rev. 08/06
                                                  © 2002, The Compliance Source, Inc.

MERS Modified Form 3801 01/01

**1.  Payment of Principal, Interest and Other Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and if allowable under Applicable Law, any prepayment charges and late charges due under the Note. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

**2.  Application of Payments or Proceeds.** Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14 or in such manner or location as required under Applicable Law. Except as otherwise described in this Section 2, and as permitted under Applicable Law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) any unpaid charges; (b) interest due under the Note; (c) principal due under the Note; (d) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. To the extent permitted by Applicable Law, voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.  Funds for Escrow Items.** Subject to Applicable Law, Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Ohio Mortgage–Single Family–Secondary Lien                     MERS Modified Form 3801 01/01
—THE COMPLIANCE SOURCE, INC.—          Page 4 of 13      Modified by "The Compliance Source, Inc." 14000 ...
www.compliancesource.com                                          © 2002, The Compliance Source, Inc.



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender. If under Section 21 the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

4. **Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust, or other security agreement with a lien which has priority over this Security Instrument. Borrower shall pay when due, all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien other than a lien disclosed to Lender in Borrower's application or in any title report Lender obtained which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan if allowed under Applicable Law.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time



charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5, shall be added to the unpaid balance of the loan and interest shall accrue at the Note rate, from the time it was added to the unpaid balance until it is paid in full.

Subject to Applicable Law, all insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 21 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has

Ohio Mortgage-Single Family-Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 6 of 13

MERS Modified Form 3805 01/01
Modified by "The Compliance Source, Inc." 14882OH 04/01 Rev. 04/04
© 2002, The Compliance Source, Inc.


released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

7. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

8. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which has or may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has or may attain priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees, to the extent permitted by applicable law, to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument if allowed under Applicable Law. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

9. **Mortgage Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** The Miscellaneous Proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Security Instrument.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided

Ohio Mortgage–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 7 of 13

MERS Modified Form 3801 01/01
Modified by "The Compliance Source, Inc." 54582OH 06/02 Rev. 04/04
© 2002, The Compliance Source, Inc.



that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, as allowed under Applicable Law. The absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Ohio Mortgage–Single Family–Secondary Lien
—The COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 8 of 13

MERS Modified Form 3801 01/01
Modified by "The Compliance Source, Inc." 14560OH 04/02 Rev. 08/04
© 2002, The Compliance Source, Inc.



If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any

Ohio Mortgage–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 9 of 13

MERS Modified Form 3801 01/01
Modified by "The Compliance Source, Inc." 14402CS 04/03 Rev. 03/06
© 2002, The Compliance Source, Inc.



default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, as allowed under Applicable Law; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, if required under Applicable Law, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 21 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. Hazardous Substances. As used in this Section 20: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Ohio Mortgage–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 18 of 13

MERS Modified Form 3801 01/01
Modified by "The Compliance Source, Inc." 14000OH 04/02 Rev. 08/06
© 2002, The Compliance Source, Inc.



Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, costs of title evidence.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Lender shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**23. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, ALLEN County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 23 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

**REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

Ohio Mortgage–Single Family–Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 11 of 13

MERS Modified Form 3801 01/01

10-03223-rls    Doc 1    FILED 08/10/10    ENTERED 08/10/10 16:31:07    Page 18 of 22



Instr:200610260010028    10/26/2006
P: 12 of 18F: $132.00    12:26:11PM
Mona S Losh              T20060016693
Allen County            V:2006 P:10028

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Gary Plescher_ _____ (Seal)
GARY PLESCHER                         -Borrower
                                     [Printed Name]

_Erika Plescher_ _____ (Seal)
ERIKA PLESCHER                        -Borrower
                                     [Printed Name]

_____ (Seal)
                                     -Borrower
                                     [Printed Name]

_____ (Seal)
                                     -Borrower
                                     [Printed Name]

_____[Acknowledgment on Following Page]_____

Ohio Mortgage-Single Family-Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 12 of 13

MERS Modified Form 3801 01/01
Modified By "The Compliance Source, Inc." 14803OH 08/01 Rev. 09/06
© 2002, The Compliance Source, Inc.



Inst r:2005103500108026 10/20/2006
P. 13 of 15F: $132.00 12:20:11PM
Mona S Losh T200500100693
Allen County V:2006 P:10028

State of Ohio §
§
County of Allen §

Before me the undersigned authority, on this day personally appeared **GARY PLESCHER and ERIKA PLESCHER**

known to me (or proved to me through an identity card or other document) to be the person(s) whose name is subscribed to the foregoing instrument, and acknowledged to me that ho/she/they executed the same for the purposes and consideration therein expressed.

Given under my hand and seal on this 25th day of October, 2006

(Seal)

PAMELA A. DALEY-JENNINGS
Notary Public, State of Ohio
My Commission Expires
July 28, 2011

_Pamela CDaley-Jenning_
Notary Public
My Commission Expires:

This instrument was prepared by:

**MERITAGE MORTGAGE CORPORATION**
_[Company Name]_

**9300 SW GEMINI DRIVE, SUITE 100**
_[Street Address]_

**BEAVERTON, OR 97008**
_[City, State Zip Code]_

Ohio Mortgage—Single Family—Secondary Lien
—THE COMPLIANCE SOURCE, INC.—
www.compliancesource.com

Page 13 of 13

MERS Modified Form 3801 01/01
Modified by "The Compliance Source, Inc." 14182OH 08/03 Rev. 08/06
© 2002, The Compliance Source, Inc.



Loan Number: 1000269722

# BALLOON RIDER

THIS BALLOON RIDER is made this 24th day of October, 2006, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to **MERITAGE MORTGAGE CORPORATION** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**1132 RICHIE, LIMA, OH 45801**
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

Additional Covenants. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**Balloon Rider**
---The Compliance Source, Inc.---
www.compliancesource.com

Page 1 of 2





BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____     _____      _____
GARY PLESCHER          -Borrower     ERIKA PLESCHER              -Borrower

_____     _____
              -Borrower                                      -Borrower

Page 2 of 2

2771304U 08/05
©2005, The Compliance Source, Inc.